DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**RICHARD A. WRIGHT,**
Appellant,

v.

**GUY YUDIN & FOSTER, LLP,**
Appellee.

No. 4D14-103

[October 7, 2015]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, Martin County; Lawrence Mirman, Judge; L.T. Case No. 432011CA1207.

Amy D. Shield and Roger Levine of Amy D. Shield, P.A., Boca Raton, for appellant.

Joanne Foster and John S. Yudin of Guy Yudin & Foster, LLP, Stuart, for appellee.

HAIMES, DAVID A., Associate Judge.

Appellant Richard A. Wright appeals the Final Judgment awarding the law firm of Guy Yudin & Foster, LLP ("GYF" or "the law firm") attorneys' fees in the amount of $109,960.76 plus prejudgment interest in the amount of $28,877.34. Because we find that the agreement between the parties did not involve a contingency fee arrangement, and because the trial court properly calculated prejudgment interest, we affirm.

## I. Background

Over the course of many years, Appellant and the law firm had an ongoing relationship where the law firm would provide legal services to Appellant on an as needed basis. The relationship was such that Appellant frequently had multiple actions pending with the law firm.

Of significance to the present case are two separate matters where Appellant hired the law firm to represent him. The first matter began in 2005 when the law firm represented Appellant in a complex federal maritime suit that arose after a boat detached from Appellant's marina

during a hurricane and destroyed another marina's dock. The federal maritime case was referred to by the parties as the URGOS matter. The case reached a settlement agreement in August 2006, and Appellant incurred legal fees to the law firm during the URGOS matter totaling $47,837.34.

The second matter began in 2006, when Appellant hired the law firm to represent him in matters involving a piece of real property known as the Tierra Del Lago property ("the TDL Property"). Among these matters was a lawsuit against Appellant's sister, Gay Vela ("the Sister"), where the Sister sought to foreclose on a mortgage and force a sale of the TDL Property.

As of March 2007, Appellant had not paid the law firm for the legal fees incurred in the URGOS matter. The law firm also had performed a substantial amount of legal work with respect to the TDL Property. On March 1, 2007, in anticipation of the sale of the TDL Property, the law firm requested Appellant to sign a letter to ensure that their legal fees would be paid at the closing of the TDL Property. The text of the March 1, 2007 letter reads as follows:

> The purpose of this letter is to memorialize our agreement regarding attorneys' fees owed by you to [the law firm] for the current matter regarding Tierra del Lago and for our representation of URGOS in the matter of Stuart Cay Marina and Allied Marine Group v. *M/V Special Delivery*, URGOS, et. al., U.S.D.C. So. Dist. of Florida, 04-14360. Per our discussion you agreed these fees would be paid at the closing of the Tierra del Lago property.
>
> The amount owed to [the law firm] for the URGOS matter totals $47,837.34 and fees in the matter of Tierra del Lago to date total $10,703.14.
>
> Please sign this letter and return a copy to us to confirm you consent to this agreement. I will provide a copy to . . . the committee counsel for Tierra del Lago, so that arrangements for payment at closing can be made.

Appellant agreed to the letter and signed it.

In October 2007, Appellant entered into a contract for the sale of the TDL Property for $8,500,000. In February 2008, after becoming dissatisfied with GYF's services, Appellant terminated the law firm's

2

representation and requested the law firm to transfer his file to different counsel. In March 2008, the sale of the TDL Property fell through due to extensive wetlands issues and lack of governmental approvals required to develop the site.

In September 2010, the Sister sold her interest in the TDL Property for approximately $1,100,000. A warranty deed was issued to the purchaser. Subsequently, the law firm became aware of the closing and unsuccessfully attempted to collect from Appellant the amounts outlined in the March 1, 2007 letter. The law firm then filed the present action seeking to recover its attorneys' fees.

Following a non-jury trial, the trial court entered a final judgment in favor of the law firm in the total amount of $138,838.10, consisting of $109,960.76 of attorneys' fees plus $28,877.34 of prejudgment interest. The $109,960.76 consisted of the $58,540.48 of attorneys' fees in the March 1, 2007 letter and $51,420.28 for the work the law firm performed from April 2007 to February 2008. Appellant appealed.

## II. Discussion

Appellant raises two issues on appeal. First, Appellant asserts that the trial court erred in its interpretation of the March 1, 2007 letter and that the letter constituted a contingency fee arrangement. Appellant argues that because the sale contingency set forth in the March 1, 2007 letter was not met, no attorneys' fees were ever due. Second, Appellant asserts that the trial court erred in calculating the prejudgment interest award. We will address each issue in turn.

### A. Attorneys' Fees

A trial court's decision awarding unpaid attorneys' fees is reviewed for abuse of discretion. *Glantz & Glantz, P.A. v. Chinchilla*, 17 So. 3d 711, 713 (Fla. 4th DCA 2009); *Universal Beverages Holdings, Inc. v. Merkin*, 902 So. 2d 288, 290 (Fla. 3d DCA 2005). A trial court's interpretation of a contract is reviewed *de novo*. *Kolter Signature Homes, Inc. v. Shenton*, 46 So. 3d 1211, 1215 (Fla. 4th DCA 2010).

Appellant argues that the trial court erred in its interpretation of the March 1, 2007 letter agreement by giving it a new interpretation than what originally was understood by the parties. Appellant asserts that, because the only terms discussed in the letter were the amounts owed and a triggering event for payment, the agreement constituted a contingency fee arrangement. Appellant contends that the contingency was for the fees to

3

be paid from the proceeds of the sale of the entire TDL Property. Appellant further argues that the September 2010 closing of the Sister's interest in the property was not the type of closing contemplated in the March 1, 2007 letter, because Appellant was not the seller and still retained his interest in the TDL Property. Appellant concludes that because the contingency was not met, no attorneys' fees were ever due. Appellant relies principally on *Brickell Place Condo Ass'n v. Joseph H. Ganguzza & Associates, P.A.*, 31 So. 3d 287 (Fla. 3d DCA 2010), in support of his position.

In *Brickell Place*, the court provided a succinct definition of a contingency fee agreement and when it applies. "A contingency fee agreement is one in which the fee is made contingent on the outcome of the matter upon which the services are rendered." *Id.* at 290 (citing R. Regulating Fla. Bar 4-1.5(f)(1), and BLACK'S LAW DICTIONARY 320 (6th ed. 1990) (defining a contingency contract as "[a] contract, part of performance of which at least is dependent on the happening of a contingency. Sometimes used to refer to fee arrangement with attorney who agrees to accept [a] fee on the contingency of a successful outcome")).

In that case, a law firm had represented two condominium associations in collections matters for twenty years. *Id.* at 288-89. After the condominium associations terminated their relationship with the law firm and retained new counsel, the prior law firm filed a retaining lien and refused to turn over its files until they were paid for legal services. *Id.* at 289. The condominium associations filed suit to obtain their files. *Id.* To resolve the dispute, the court determined the nature of the fee arrangement between the parties as follows:

> The arrangement between the law firm and the Associations for the collection of delinquent unit owner fees falls directly within these [contingency fee] definitions. The law firm did not bill for nor get paid for its services in collecting these delinquent fees unless and until it was successful in collecting the amount due from the unit owner.

*Id.* at 290. The court explained that a proper contingency agreement occurs when a law firm does not bill or expect payment until and unless the contingency is achieved. *Id.* The law firm did not bill or receive payment until it was successful in collecting delinquent fees from condominium unit owners. *Id.* The agreement at the outset between the parties was such that no payment was due to the firm unless and until the firm successfully collected the delinquent fees from the unit owners. *Id.* Therefore, the court found that the arrangement between the parties was a contingency fee arrangement.

4

Turning to the present case, the March 1, 2007 letter, unlike the arrangement in *Brickell Place*, does not meet the definition of a contingency fee agreement. First, the March 1, 2007 letter was drafted solely to memorialize the amounts that were *already due and owed* to the law firm in order to assure Appellant agreed to those amounts before further legal services continued. At the time Appellant incurred the fees memorialized in the letter, there was no consideration by the parties that payment of the fees depended on some successful action by the law firm. The longstanding relationship between Appellant and the law firm further evidences the payment procedures used over the course of their representations — the bills were incurred as services were rendered, and Appellant would pay for those services intermittently as the bills increased.

Second, the letter also was executed to provide a timeframe for payment of the legal services already due. Whether the TDL Property ultimately was sold had no bearing on whether Appellant was indebted to the law firm for the services already rendered, a majority of which arose from previous litigation in the URGOS matter. No plausible interpretation of the terms of the letter suggests that the law firm did not intend to be paid for its past services unless the sale of the TDL Property occurred. Rather, the letter acted as an admission by Appellant for the debt already owed to the law firm regardless of what event triggered the time for payment.

A contingency fee arrangement occurs when a law firm does not bill or expect payment until and unless the contingency is achieved. Contingency fee arrangements are typically contingent upon a successful outcome. *See* R. Regulating Fla. Bar 4-1.5(f)(1) ("A fee may be contingent on the outcome of the matter for which the service is rendered."). Here, the law firm already had performed legal services for which it clearly expected to receive payment, regardless of the outcome of the case or any other contingency. Therefore, the trial court properly concluded that the March 1, 2007 letter was not a contingency fee agreement and was instead an admission by Appellant for legal fees already owed. Accordingly, we affirm the award of attorneys' fees.

B. Prejudgment Interest

"The trial court's decision concerning entitlement to prejudgment interest is reviewed *de novo*." *Reimbursement Recovery, Inc. v. Indian River Mem'l Hosp., Inc.*, 22 So. 3d 679, 682 (Fla. 4th DCA 2009). It is well settled that prejudgment interest is calculated from the date that payment was due. *Bevins v. Antuna,* 68 So. 3d 420, 420 (Fla. 4th DCA 2011) ("[T]he Antunas should recover from the Bevins the accrued prejudgment interest

on their escrow deposit from the date the funds should have been returned to them."); *Capitol Envtl. Servs. Inc. v. Earth Tech, Inc.*, 25 So. 3d 593, 597 (Fla. 1st DCA 2009) ("Once the jury sets the amount of damages to be awarded, the damages are retroactively considered liquidated damages, and the plaintiff is entitled to prejudgment interest back to the date that the damages were due."); *Reimbursement Recovery*, 22 So. 3d at 682 ("Where a disputed claim becomes liquidated by the trier of fact as to the amount recoverable, interest should be awarded from the date the payment was due.").

"The lower court's ultimate factual determinations during a non-jury trial may not be disturbed on appeal unless shown to be unsupported by competent and substantial evidence or to constitute an abuse of discretion." *Zupnik Haverland, L.L.C. v. Current Builders of Fla., Inc.*, 7 So. 3d 1132, 1134 (Fla. 4th DCA 2009) (citing *Berlin v. Pecora*, 968 So. 2d 47, 50 (Fla. 4th DCA 2007), *rev. denied*, 982 So. 2d 684 (Fla. 2008)); *see also Merkin*, 902 So. 2d at 290 ("When a cause is tried without a jury, the trial judge's findings of fact are clothed with a presumption of correctness on appeal, and these findings will not be disturbed unless the appellant can demonstrate that they are clearly erroneous.").

Turning to the present case, the trial court awarded $28,877.34 of prejudgment interest. Appellant contends that the dates the trial court utilized for when interest began accruing were chosen in error. We disagree.

The trial court found that the prejudgment interest on the $51,420.28 (the fees from the TDL Property litigation incurred after the March 1, 2007 letter) began accruing in March 2008, the month after Appellant terminated GYF's representation and transferred the case to new counsel. The trial court also found that the prejudgment interest on the $58,540.48 of attorneys' fees from the March 1, 2007 letter began to accrue in September 2010 when the Sister closed on the sale of her interest in the TDL Property. Appellant asserts that the Sister's sale was not the sale contemplated in the March 1, 2007 letter. Although the letter does not specifically mention a particular closing, Appellant hired the law firm due to the Sister's threatened foreclosure sale of the TDL Property. Both dates that the trial court chose for when interest began to accrue were not clearly erroneous and were supported by competent and substantial evidence. Accordingly, we affirm the prejudgment interest award.

*Affirmed.*

DAMOORGIAN and GERBER, JJ., concur.

*     *     *

*Not final until disposition of timely filed motion for rehearing.*