DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**GLENROY ANDERSON,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D15-4300

[November 1, 2017]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Lisa Porter, Judge; L.T. Case No. 13-8650 CF10A.

Richard L. Rosenbaum of the Law Offices of Richard Rosenbaum, Fort Lauderdale, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Allen R. Geesey, Assistant Attorney General, West Palm Beach, for appellee.

CIKLIN, J.

An encounter between the defendant and another man on a public roadway resulted in the defendant's conviction of aggravated assault with a firearm. Because the admission of certain hearsay evidence was not harmless, we reverse and remand for a new trial.

The evidence at trial revealed the following. During the victim's drive home from work, the defendant pulled up close behind his vehicle, even though the victim was traveling well over the speed limit. The victim, a two-time convicted felon, braked abruptly, causing the defendant to veer his Lexus into another lane. Instead of being put off, the defendant pulled his Lexus alongside the victim's vehicle. The windows of the victim's vehicle were down, as was the front driver's side window of the defendant's Lexus.

The defendant rested a gun on the windowsill of his Lexus, pointed the gun in the victim's direction, and asked him if he had a "f'ing problem." The victim responded that there was no problem, and the defendant drove ahead of him, seemingly ending the encounter. As soon as traffic came to

a stop, however, the defendant opened the door of his Lexus, placed one foot on the ground, and looked back at the victim. The victim put his car in reverse and threw up his hands to indicate that he was not interested in a confrontation. The defendant sped away. The victim followed at a distance and was able to obtain the license plate number on the defendant's Lexus, which he immediately reported to a 911 operator.

During the investigation, law enforcement officers spoke to both the victim and the defendant. The victim described the gun as "nickel plated or chrome, something along those lines," and as a silver automatic firearm. He also stated that holes on the front of the gun were "silver because it's stainless steel."

When the defendant was arrested about three weeks after the incident, a gun with a silver upper portion and black lower portion was recovered from his Lexus.

The case proceeded to trial. The victim first testified that the gun was a nine-millimeter "nickel plated chrome plated gun," and that on the portion of the gun facing him, he observed the hole "where the bullet comes out," and a smaller hole below it. Next, an investigating officer testified over a hearsay objection that "[t]he victim [had previously] said that the gun had a silver or nickel plated top, or what we call upper, and the lower was black and then what struck me about what he said was he said it had two holes, one larger on top and one smaller hole on the bottom."

The officer testified that the gun found in the defendant's Lexus "was a semi-auto and it had a distinct feature that I found which was it had the stainless steel upper with black lower." Over still another hearsay objection, the officer also testified that victim's description of the gun was "distinctive" as he described the gun as "a stainless steel upper with black lower," and there was one hole over a smaller hole.

The defendant denied pointing a gun at the victim, although he acknowledged that he owned a gun and was licensed to carry a concealed weapon. The concealed firearm license was entered into evidence. The defendant and his girlfriend testified that the gun was packed away the day of the incident, as the two were in the midst of moving and did not want the gun to be accessible to the girlfriend's toddler. The defendant's employer testified that the defendant left work the day of the incident around the timeframe of the incident.

"The standard of review of a trial court's decision on the admissibility of evidence is generally an abuse of discretion standard. However, the

2

question of whether evidence falls within the statutory definition of hearsay is a matter of law, subject to *de novo* review." *Burkey v. State*, 922 So. 2d 1033, 1035 (Fla. 4th DCA 2006).

*The state does not dispute that the testimony the defense objected to is hearsay.* *See* § 90.801(1)(c), Fla. Stat. (2015) ("'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."). There is no question that the testimony was offered to prove the truth of the matter asserted—the physical characteristics of the gun that the defendant was alleged to have brandished during the altercation. The state did not argue at trial nor does it argue on appeal that the testimony is subject to an exception to the hearsay rule. *Thus, the only issue for this court is whether the error was harmless.*

"The harmless error test . . . places the burden on the state, as the beneficiary of the error, to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction." *State v. DiGuilio*, 491 So. 2d 1129, 1135 (Fla. 1986). "The test for harmless error focuses on the effect of the error on the trier of fact." *Johnson v. State*, 53 So. 3d 1003, 1007 (Fla. 2010). Further—we importantly note—the test is not:

> a sufficiency-of-the-evidence, a correct result, a not clearly wrong, a substantial evidence, a more probable than not, a clear and convincing, or even an overwhelming evidence test. Harmless error is not a device for the appellate court to substitute itself for the trier-of-fact by simply weighing the evidence.

*Id.* (quoting *DiGuilio*, 491 So. 2d at 1139).

The state argues that the erroneously admitted testimony was "largely cumulative" to other unobjected to testimony and evidence offered at trial and thus was harmless. *See English v. State*, 43 So. 3d 871, 872 (Fla. 5th DCA 2010) (recognizing that the contents of a BOLO were inadmissible as they contained incriminating hearsay statements but that the error was harmless where the victim testified to the same information at trial).

Here, the evidence that was admitted without objection by either party characterized the victim's description of the gun as "nickel-plated chrome-plated," "silver," "silver top," and with two holes. Conversely, the state presented the testimony of a police officer who stated that the gun found

3

in the defendant's car had a stainless steel upper and a black lower and over the hearsay objection at issue, that the victim had earlier described the gun as having a silver or nickel-plated top with a black lower section.

Ultimately, this case came down to credibility and to whether the jury believed the defendant's claim that he did not have his gun on the day of the incident. The officer's hearsay testimony was the *only evidence* corroborating that the victim's previous descriptions of the gun matched one of the distinctive color features of the defendant's gun: its silver upper portion and black lower portion.[1]

Considering all of the evidence - including testimony from a law enforcement officer, whose veracity is generally regarded as highly credible, and the fact that the jury made a specific request to see the gun during its deliberations - it cannot be said that there is no reasonable possibility the hearsay testimony affected the verdict.

*Reversed and remanded for new trial.*

TAYLOR, J., concurs.
MAY, J., dissents with opinion.

MAY, J., dissenting.

I respectfully dissent. As the majority emphasizes, the only issue for our review is whether the admission of the detective's hearsay testimony was harmless. The State argues, and I agree, that the testimony was cumulative of the victim's statement and trial testimony describing the gun. In short, it was harmless.

The hearsay consisted of two answers to questions asked of the detective at trial. Over defense hearsay objections, the detective testified:

> The victim said that the gun had a silver or nickel plated top, or what we call upper, and the lower was black and then what struck me about what he said was he said it had two holes, one larger hole on top and one smaller hole on the bottom.
> . . . .
>
> The distinctive was that it was a stainless steel upper with

---

[1] "[W]here the key witness's credibility has been put in issue, it cannot be doubted that corroborating testimony may play a substantial role in the jury's weighing of the evidence." *Conley v. State*, 620 So. 2d 180, 184 (Fla. 1993).

black lower and the hole on top which was the barrel of the gun was bigger and then the description was that there was a hole on the bottom, but I knew that just couldn't be but I figured the []hole on the bottom was the spring guide.

But, the detective also testified that he drew a sketch of the gun based on the victim's description. The sketch showed the two holes on the front of the gun with the larger hole on top and the smaller hole below the barrel. The sketch was admitted into evidence without objection.

The defendant was arrested three weeks after the incident, and consented to a search of his car. A deputy found a gun in the glove compartment. It was a "semi-auto" with a stainless steel upper with black lower. The gun was admitted into evidence without objection.

In a recorded police interview, the defendant admitted he owned the gun found in his car, which matched the description of the gun given by the victim. But, the defendant claimed the gun was not in his car on the date of the incident. The detective informed the defendant that the victim told him about the "distinctive" feature of the large hole over the smaller hole, and the "silver top."

The victim testified at trial that he "saw the opening to where the bullet comes out and right below it was the little opening." He reiterated that the gun was "nickel plated or chrome, something along those lines." The victim clarified that the two holes were on the front of the gun, and that the larger hole on top was the one where he believed a projectile would be emitted.

During closing argument, the prosecutor argued that the victim described the gun as "being a nickel back, a steel plate being on top of it," as having "two holes, one the larger hole, and then a second smaller hole." The prosecutor referenced the sketch.

"The harmless error test [requires] the [S]tate . . . to prove . . . there is no reasonable possibility that the error contributed to the conviction." *State v. DiGuilio*, 491 So. 2d 1129, 1135 (Fla. 1986).

> The test is not a sufficiency-of-the-evidence, a correct result, a not clearly wrong, a substantial evidence, a more probable than not, a clear and convincing, or even an overwhelming evidence test. Harmless error is not a device for the appellate court to substitute itself for the trier-of-fact by simply weighing the evidence.

5

*Id.* at 1139.

Here, most of the detective's testimony was cumulative to the victim's own trial testimony. The only difference between the two was the two-tone coloring of the gun. And, the victim identified the defendant as the one who threatened him with the gun.

The Fifth District has held the admission of hearsay is harmless where the victim testifies to the same information at trial. *See English v. State*, 43 So. 3d 871, 872-73 (Fla. 5th DCA 2010). It did so even though the hearsay contained a more detailed description than the victim's in-court description. *Id.*

In *English*, the victim reported a robbery of his cell phone. Law enforcement found the defendant nearby in clothes matching the victim's description. When law enforcement called the victim's cell phone number, the phone in the defendant's pants pocket rang. *Id.* at 872. The defendant objected to testimony about the suspect's description in a BOLO. While the Fifth District found the admission of the hearsay was error, the error was harmless because the testimony was cumulative of the victim's trial testimony.

We reached the same conclusion in *Presley v. State*, 839 So. 2d 813, 813-14 (Fla. 4th DCA 2003). There, we held that an officer's testimony of a BOLO description was harmless where the witness who called in the description testified at trial about her description of the defendant. *Id.* at 814; *see also Casica v. State*, 24 So. 3d 1236, 1241 (Fla. 4th DCA 2009) (holding that an erroneously admitted statement the victim made to a nurse was harmless in light of the victim's trial testimony); *Miles v. State*, 839 So. 2d 814, 819 (Fla. 4th DCA 2003) (finding an officer's hearsay testimony of the assailant's description was harmless given the victim's trial testimony); *Livingston v. State*, 219 So. 3d 911, 916 (Fla. 2d DCA 2017) (holding that an officer's erroneously admitted BOLO testimony was harmless considering the victim's trial testimony).

Here, a gun matching the victim's description was found in the defendant's car and admitted without objection. A sketch drawn by the detective, exhibiting the distinctive two holes at the front of the gun described by the victim, was admitted without objection. The victim testified about the incident and described the gun as chrome or silver with two holes in the front, the larger being at the top. While the admission of the hearsay was error, the detective's hearsay testimony was cumulative of other evidence describing the gun, including the victim's trial testimony.

6

I would affirm.

*     *     *

***Not final until disposition of timely filed motion for rehearing.***