# FIFTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Case Nos. 5D2024-1870
5D2024-1874
LT Case Nos. 2017-CA-000056
2017-CA-000057

_____

LISA A. SCHLECHTER and GARY
JAMES SCHLECHTER,

     Appellants,

     v.

ARCPE BAHAMAS, LLC,
Successor in Interest to
CapitalSource International,
LLC f/k/a CapitalSource
International, Inc.,

     Appellees.

_____

On appeal from the Circuit Court for Flagler County.
Kathryn Diane Weston, Judge.

S. Brian Bull, of Scott, Harris, Bryan, Barra & Jorgensen, P.A.,
Palm Beach Gardens, for Appellants.

Nancy M. Wallace, of Akerman, LLP, Tallahassee; Marc J.
Gottlieb, of Akerman, LLP, Fort Lauderdale; and Christian P.
George, David Otero, and Adam C. Remillard, of Akerman, LLP,
Jacksonville, for Appellee.

November 14, 2025

KILBANE, J.

This appeal relates to a series of cases stemming from a failed luxury development in the Bahamas. After successfully enforcing promissory notes used to purchase lots in the proposed resort community, the parties proceeded to trial only to determine the amount of prejudgment interest to be awarded to the note holder. Because the prejudgment interest award was not supported by competent substantial evidence, we reverse.[1]

**Facts**

Gary and Lisa Schlechter ("Schlechters") executed adjustable-rate balloon promissory notes to buy undeveloped lots at a proposed community titled "Ginn Sur Mer" on Grand Bahama Island. After the community failed to develop on schedule, the Schlechters defaulted on their notes. ARCPE Bahamas, LLC ("ARCPE")—successor in interest to the original lender—filed suit to collect sums due under the notes. Significant issues were resolved via summary judgment for ARCPE,[2] who then moved for final summary judgment. The Schlechters opposed the motion and asserted, among other things, that ARCPE's prejudgment interest calculation lacked evidentiary support. The trial court found ARCPE was entitled to prejudgment interest, but the amount remained an issue of fact.

A trial was held to determine the amount of prejudgment interest. The Schlechters' notes were admitted into evidence. Barry Brecher, ARCPE's asset manager—who was listed and presented as a fact witness—provided the only testimony. Brecher admitted the London Interbank Offered Rate ("LIBOR") Index was necessary to calculate the annual interest rate and total amount of prejudgment interest owed. In calculating the Schlechters' interest rates, Brecher relied on ARCPE's interest

---

1. We affirm the remaining issues without further discussion.

2. Cases brought by ARCPE against the Schlechters and other defaulting borrowers were eventually consolidated for pretrial proceedings.

rate database.[3]  He verified the rates by comparing them with an "industry standard website" that he did not recall the name of and could not confirm was the Fannie Mae website.  To testify to the total amount of prejudgment interest, Brecher refreshed his recollection with a chart he prepared with ARCPE's counsel.  Neither the database, the website, nor the chart were entered into evidence.

The Schlechters objected[4] to Brecher's testimony asserting he had no personal knowledge of the applicable interest rates and his testimony on the subject would be inadmissible hearsay.  The objections were overruled and Brecher testified to the total amount of prejudgment interest owed by the Schlechters.  In closing, the Schlechters argued there was no evidence in the record that would provide the applicable interest rates to determine the total amount of prejudgment interest.

The trial court entered final judgment for ARCPE awarding prejudgment interest in the amount Brecher testified was owed on the two notes: $435,779.02 and $550,873.61, respectively.  The Schlechters timely appeal.

**Merits**

Contract interpretation and entitlement to prejudgment interest are reviewed de novo.  *See Robertson v. Hochstatter*, 369 So. 3d 716, 718 (Fla. 4th DCA 2023).  Additionally, "whether evidence falls within the statutory definition of hearsay is a matter of law, subject to *de novo* review." *Bugg v. State*, 295 So. 3d 1238, 1244 (Fla. 5th DCA 2020) (quoting *Anderson v. State*, 230 So. 3d 175, 176 (Fla. 4th DCA 2017)).  Still, "[t]he lower court's ultimate factual determinations during a non-jury trial

---

3.  Brecher testified ARCPE kept a record of the LIBOR Index in a database.  After the LIBOR Index ceased to be published, ARCPE used the Secured Overnight Financing Rate ("SOFR") Index as a substitute.  Brecher testified that he did not know how the database acquired its data.

4.  The parties agreed that objections made by any of the consolidated defendants would be applied to and preserved for the other defendants.

may not be disturbed on appeal unless shown to be unsupported by competent and substantial evidence or to constitute an abuse of discretion." *Wright v. Guy Yudin & Foster, LLP*, 176 So. 3d 368, 373 (Fla. 4th DCA 2015) (quoting *Zupnik Haverland, L.L.C. v. Current Builders of Fla., Inc.*, 7 So. 3d 1132, 1134 (Fla. 4th DCA 2009)).

"Where a disputed claim becomes liquidated by the trier of fact as to the amount recoverable, interest should be awarded from the date the payment was due." *Id.* (quoting *Reimbursement Recovery, Inc. v. Indian River Mem'l Hosp., Inc.*, 22 So. 3d 679, 682 (Fla. 4th DCA 2009)). The trial court calculates the amount of prejudgment interest to award. *See Mem'l Health Sys., Inc. v. Hamilton Staffing Sols., Inc.*, 414 So. 3d 350, 351 (Fla. 5th DCA 2025) ("[T]he issue of prejudgment interest is a discrete issue to be determined by the trial court, not the finder of fact." (quoting *Westgate Mia. Beach, LTD. v. Newport Operating Corp.*, 55 So. 3d 567, 576 (Fla. 2010))).

In its calculation, the trial court applies a default statutory interest rate unless the parties' contract provides otherwise. *See* § 687.01, Fla. Stat. (2024) ("In all cases where interest shall accrue without a special contract for the rate thereof, the rate is the rate provided for in s. 55.03."); *DSLRPros, Inc. v. Lalo*, 339 So. 3d 379, 383 (Fla. 3d DCA 2021) ("[T]he statutory rate applies when the contract is silent on the matter." (quoting *Republic Srvs., Inc. v. Calabrese*, 939 So. 2d 225, 226 (Fla. 5th DCA 2006))). Prejudgment interest is often a simple mathematical calculation. *See Argonaut Ins. Co. v. May Plumbing Co.*, 474 So. 2d 212, 215 (Fla. 1985) ("Once a verdict has liquidated the damages as of a date certain, computation of prejudgment interest is merely a mathematical computation. . . . [I]t is a purely ministerial duty of the trial judge or clerk of the court to add the appropriate amount of interest to the principal amount of damages awarded in the verdict."). However, the issue becomes more complex when a contract requires recalculation of variable interest rates over time. *See Gonzalez v. Onewest Bank, FSB*, 204 So. 3d 167, 168 (Fla. 4th DCA 2016) ("Because the note required recalculation of interest on change dates, calculation of the interest amount was not a simple ministerial function."). If this calculation also depends on the presentation of evidence, such as a necessary variable, interest is not liquidated. *Cf.*

4

*Fogarty v. Nationstar Mortg., LLC*, 224 So. 3d 313, 315 (Fla. 5th DCA 2017) ("Damages are liquidated when the proper amount to be awarded can be determined with exactness from the cause of action as pleaded, i.e., from a pleaded agreement between the parties, by an arithmetical calculation or by application of definite rules of law." (quoting *Asian Imports, Inc. v. Pepe*, 633 So. 2d 551, 552 (Fla. 1st DCA 1994))).

The Schlechters do not dispute that ARCPE was entitled to prejudgment interest. The notes provided for the accrual of interest "until the full amount of Principal has been paid." An initial interest rate was provided as well as the formula for determining the variable rate as of a specified date each year ("Change Date"). This formula for the annual variable rate ("Change Rate") was equal to the LIBOR Index[5] plus specified percentage points, subject to rounding and limitations:

> Before each Change Date, the Note Holder will calculate my new interest rate by adding THREE AND 250/1000 percentage points (3.250%) to the Current Index.[6] The Note Holder will then round the result of this addition up to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The notes capped the amount of variance each year as well as an overall maximum rate but did not provide a minimum rate. Under the notes, these rates would apply both pre- and post-default.

---

5. The notes specifically provided that the variable rate would be based on the LIBOR Index "as published by Fannie Mae." If it ceased to be available, a substitute index could be used with notice to the borrower.

6. The "Current Index" was "the most recent [LIBOR] Index available as of the date 45 days before each Change Date."

Because the parties' contract provided interest rates that would apply after maturity and default, the calculation of interest had to be based on the contractual rates. *See Calabrese*, 939 So. 2d at 226 ("As the parties agreed to use the LIBOR rate, that is the rate that should govern."); *see also DSLRPros, Inc.*, 339 So. 3d at 383 ("[F]or a contract rate to apply in lieu of the statutory rate, the contract must actually provide for a specific post-maturity/default interest rate." (quoting *Trigeorgis v. Trigeorgis*, 240 So. 3d 772, 776 (Fla. 4th DCA 2018))). Although the contract provided a specified initial interest rate, the parties admitted the rate had changed prior to the Schlechters' default. Thus, the trial court needed the contract's formula to determine each applicable Change Rate and confirm it was within the notes' expressed variance and maximum limitations. But, as Brecher admitted, the adjustable interest rate could not be calculated without evidence of a variable: the Fannie Mae LIBOR Index.

At trial, ARCPE did not provide evidence of the LIBOR Index associated with any proposed Change Date or Change Rate. Instead, it relied on Brecher's testimony about *his* calculation of the *total* amount of interest owed by the Schlechters. ARCPE asserts Brecher's testimony was sufficient[7] and that the LIBOR/SOFR Indices on which he relied fell under either the business records or commercial publications hearsay exceptions. *See* § 90.803(6), (17), Fla. Stat. (2024). But ARCPE failed to admit evidence of the Indices themselves and Brecher's testimony about its contents was hearsay. *See Roberts v. Direct Gen. Ins. Co.*, 337 So. 3d 889, 891–92 (Fla. 2d DCA 2022) ("[W]hile the business-records exception . . . allows the admission of '[a] memorandum, report, record, or data compilation,' it does not authorize hearsay *testimony* concerning the contents of business records which have not been admitted into evidence." (quoting *Thompson v. State*, 705 So. 2d 1046, 1048 (Fla. 4th DCA 1998))).

As ARCPE failed to provide evidence of the LIBOR variable, it was impossible for the trial court to calculate the adjustable

---

7. Notably, Brecher testified he did not review the entire historical LIBOR Index and did not know whether it had ever been a negative number.

6

interest rates or total amount of prejudgment interest to award. S*ee Miami-Dade Cnty. Expressway Auth. v. Elec. Transaction Consultants Corp.*, 300 So. 3d 291, 295 (Fla. 3d DCA 2020) ("Under Florida law, 'the plaintiff must present evidence regarding a reasonable certainty as to its amount of damages.'" (quoting *Gonzalez v. Barrenechea*, 170 So. 3d 13, 16 (Fla. 3d DCA 2015))); *Jenkins v. Plaza 3000, Inc.*, 134 So. 3d 1127, 1132 (Fla. 4th DCA 2014) ("Evidence of the amount of damages cannot be based on speculation and conjecture."). Thus, the trial court's award was not supported by competent substantial evidence. *See, e.g.*, *Gonzalez*, 204 So. 3d at 168 (reversing interest award where the evidence revealed a range of possible rates and no testimony was presented "about the relevant LIBOR Index on any change date"); *Salauddin v. Bank of Am., N.A.*, 150 So. 3d 1189, 1190 (Fla. 4th DCA 2014) (reversing interest award where no evidence was presented as to adjustable interest rate).

Despite being entitled to prejudgment interest and holding a trial *solely* to determine the appropriate amount, ARCPE failed to present the trial court with a variable essential to the calculation of the adjustable interest rates. Due to this failure— and because the notes did not provide for an overall minimum interest rate—the trial court could not compute the amount of prejudgment interest to award.[8] ARCPE will not be given a

---

8. When a party fails to establish adjustable rates, appellate courts have remanded prejudgment interest awards for recalculation when the proper amount could be determined without any additional evidence by applying the minimum contractual rate. *See, e.g.*, *U.S. Bank N.A. v. Engle*, 311 So. 3d 197, 202 (Fla. 2d DCA 2020) ("[W]here an interest rate is adjustable, the interest rate may be calculated using the lowest rate if that was the only proof adduced at trial."); *Michel v. Bank of N.Y. Mellon*, 191 So. 3d 981, 983–84 (Fla. 2d DCA 2016) (applying minimum interest rate where plaintiff failed to establish interest rate and witness "testified only to a total amount of outstanding interest"); *Salauddin v. Bank of Am., N.A.,* 150 So. 3d 1189, 1190–91 (Fla. 4th DCA 2014) ("[S]ince the note stated that the interest rate would not drop below five percent, this percentage was the only proof the bank supplied at trial, and the trial court should have used this interest rate to calculate the amount of interest . . . ."). When a trial court

second bite at the apple. *See, e.g.*, *Foot & Ankle Ctr. of Fla., LLC v. Vargas*, 412 So. 3d 825, 829 (Fla. 6th DCA 2024) ("[W]here a party seeking fees and costs has been afforded an evidentiary hearing, it is not entitled to a second bite at the apple to prove its claim." (quoting *Winter Park Imps., Inc. v. JM Fam. Enters., Inc.*, 77 So. 3d 227, 231 (Fla. 5th DCA 2011))).

Because the trial court's calculation of prejudgment interest was not possible based on the evidence presented below, we reverse the portion of the judgment awarding interest with instruction for the trial court to remove the prejudgment interest award. *See Jenkins*, 134 So. 3d at 1132 (reversing final judgment with instruction to remove interest amount because the trial court could not calculate the interest based on the evidence presented).

AFFIRMED in part; REVERSED in part.

EDWARDS and EISNAUGLE, JJ., concur.

---

awards prejudgment interest without a party having been given the opportunity to put in evidence on the contractual interest rate, courts have reversed the matter for further proceedings. *See Gonzalez v. Onewest Bank, FSB,* 204 So. 3d 167, 168 (Fla. 4th DCA 2016) (remanding for new trial where note provided for adjustable rate, no testimony was presented about LIBOR Index on relevant change dates, and "calculation of the interest amount was not a simple ministerial function"); *Boyette v. BAC Home Loans Servicing, LP*, 164 So. 3d 9, 10 n.1, 10–11 (Fla. 2d DCA 2015) (remanding for evidentiary hearing or trial "to establish the remaining amounts due and owing" and permitting evidence about prejudgment interest where no prior evidence was presented as to how interest accrued under adjustable rate rider). Neither circumstance is applicable here where the contract did not provide for a minimum rate and ARCPE was provided an opportunity to present evidence of the LIBOR Index and proposed Change Dates/Rates to support the amount of total interest due under the notes.

8

_____

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

_____

9